IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICHAEL WRIGHT, | § | |
| #51175-380, | § | |
| Movant, | § | |
| | § | |
| v. | § | CIVIL CASE NO. 3:22-CV-1555-K |
| | § | (CRIMINAL NO. 3:15-CR-191-K-1) |
| UNITED STATES OF AMERICA, | § | |
| Respondent. | § | |

MEMORANDUM OPINION AND ORDER

Movant Michael Wright ("Wright") filed a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 and a motion for discovery under Rule 6 of the Rules Governing Section 2255 Proceedings.  He is represented by retained counsel.  As detailed here, Movant's motions to vacate sentence and for discovery are **DENIED**.

I.    **BACKGROUND**

A jury convicted Wright of interference with commerce by robbery (Counts 1, 4, 6), three accompanying firearm offenses (Counts 2, 5, 7), and possession of a gun by a felon (Count 3), all stemming from a string of cell-phone-store robberies.   Crim. Doc. 144.[1]  The Court sentenced Wright to 438 months' imprisonment—210 months for the three robberies and 120 months for unlawful gun possession to run concurrently, and a consecutive 228 months for the firearm offenses (84 months each

---

[1] All "Crim. Doc." citations refer to the related criminal case:  *United States v. Wright*, No. 3:15-CR-191-K-1 (N.D. Tex. Jan. 15, 2020).

for Counts 2 and 5 and 60 months for Count 7).  Crim. Doc. 221.  On Feb. 18, 2021, the Fifth Circuit affirmed his conviction and sentence on direct appeal.  *United States v. Wright*, 845 F. App'x 334 (5th Cir. 2021).  Wright then unsuccessfully moved for a new trial relying on supposed new evidence.  After the Government objected, the Court denied the motion without a hearing and the Fifth Circuit affirmed.  *United States v. Wright*, No. 21-10548, 2022 WL 797414, at *1 (5th Cir. Mar. 15, 2022) (unpublished per curiam).

On July 18, 2022, Wright timely filed this § 2255 motion assisted by retained counsel Brandon Sample, the same attorney who represented him at sentencing, on appeal and on his motion for new trial and ensuing appeal.  Doc. 1.  Wright raises five grounds of ineffective assistance of counsel by Philip Linder, his trial counsel.  Doc. 1 at 13-19.  The Government filed a response in opposition.  Doc. 5.   Wright did not file a reply.  He later moved for discovery.  Doc. 11.  The Government opposes that request too.  Doc. 12.

After review of all pleadings and the applicable law, the Court concludes that Wrights' ineffective assistance claims have no merit and he fails to show good cause for obtaining discovery.  His § 2255 motion and motion for discovery should therefore be denied.

## II.    ANALYSIS

### A. Applicable Law

To succeed on a claim of ineffective assistance of counsel, the movant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Failure to establish either deficient performance or prejudice defeats the claim. *Id.* at 697. To prove the deficient-performance prong of the *Strickland* test, the movant must show that counsel made errors so serious that he or she was not functioning as the counsel guaranteed by the Sixth Amendment. *Id*. at 687. The proper measure of attorney performance is reasonableness under prevailing professional norms. *Id*. at 688. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (citation omitted).

Additionally, to prove prejudice, the movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (inquiry focuses on "whether counsel's deficient performance renders

the result of the trial unreliable or the proceeding fundamentally unfair"). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

### B. Ineffective Assistance of Counsel Claims Have no Merit

At the outset, the Court notes that Wright's ineffective assistance claims are self-serving and conclusory. Neither Wright nor his current retained counsel signed the motion under penalty perjury as required by Rule 2(b)(5) of the Rules Governing Section 2255 Proceedings or submitted an affidavit. Doc. 1 at 12. Wright has also presented nothing but bare, conclusional assertions of his trial counsel's alleged ineffective assistance. "[M]ere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) (quotations and quoted case omitted). In fact "[a]bsent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . to be of probative evidentiary value." *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983).

Wright has thus failed in his burden to establish that his trial counsel's performance was deficient or that it prejudiced him. His ineffective assistance claims therefore fail on this basis alone and for the other reasons detailed below.

### i.  Failure to Retain and Call Expert Witnesses

First, Wright asserts that his counsel rendered ineffective assistance by failing to retain and call to testify at trial two expert witnesses, a shoe and a video expert.   He maintains trial counsel should have hired a shoe expert to testify that (1) the shoes on the person running from the police (in the Ennis police dashcam video) were different from the shoes that Wright was wearing when he was arrested, and (2) Wright's feet would not have fit into the boots found after the Grand Prairie robbery.   Doc. 1 at 13-15.   Wright also contends that trial counsel should have hired a video expert to testify he was not the larger robber (who was wider and taller than Wright) in the Duncanville store robbery surveillance video.  Doc. 1 at 15-16.   His claims are unavailing, however.

Wright mentions in passing Herbert Hedges and Barry Dickey as *possible* shoe and video experts.  But he fails to present affidavits from either detailing with specificity that they would have been available to testify and the substance of any testimony they would have provided or explain how such testimony would have favored Wright's defense.  *See United States v. Fields*, 761 F.3d 443, 461 (5th Cir. 2014) (to satisfy *Strickland* prejudice based on failure to call a lay or expert witness, the movant must name the witness, demonstrate the witness's availability and willingness to testify, identify the witness's proposed testimony, and show that the testimony would have

been favorable to a particular defense (citing *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009))); *Evans v. Cockrell,* 285 F.3d 370, 377-78 (5th Cir. 2002) (denying uncalled expert-witness claim where petitioner failed to present evidence of what scientific expert would have stated if called).

That notwithstanding, considering the extensive evidence presented at trial, Wright has failed to demonstrate "a reasonable probability" that the testimony of any proposed expert witness, if presented at trial, would have changed the jury's conclusion. *See Day*, 566 F.3d at 538.   On direct appeal, the Fifth Circuit found that, if Wright could have established plain error, it would have still affirmed based on the strong evidence at trial.   *See United States v. Wright,* 845 F. App'x 334, 338 ("[W]e are satisfied that the record evidence does not call Wright's convictions into question.").   Likewise, in affirming the denial of his motion for new trial, the Fifth Circuit held that the new evidence did "not weaken the overwhelming evidence proving Wright's guilt."   *United States v. Wright*, 2022 WL 797414, at *1.

Further, a DNA analyst testified at trial that Wright's DNA was found on items collected from each of the three robberies.   *See* Crim. Doc. 209 at 217, 220 (Trial Tr. Vol. 3); Crim. Doc. 209 at 253-55; Crim. Doc. 209 at 163-72.   The jury also rejected trial counsel's related arguments about Wright's shoes not being muddy when he was arrested following the Ennis robbery, and his feet being too large to fit into the boots

found after the Grand Prairie robbery.  Crim. Doc. 210 at 18-20 (Trial Tr. Vol. 4); Crim. Doc. 209 at 107.  Similarly, the jury could have easily discounted any expert testimony about the surveillance video of the Duncanville robbery based on its own observation of Wright and the video, the victim's testimony at trial, and the DNA evidence connecting Wright directly to that robbery.

On this record, the Court concludes that any expert testimony would not have impacted the outcome of Wright's trial.  Therefore, Wright fails to establish deficient performance and prejudice and his ineffective assistance claims fail.

### ii.   Failure to Request Video to Cover Alleged Gap in Bodycam Video

Second, Wright surmises there is an alleged 12-minute gap between the bodycam videos of Officer Cate, who assisted in Wright's arrest after the Ennis robbery. Doc. 1 at 17.  He alleges that trial counsel was ineffective in failing to secure any other video that would have covered this possible gap.  Wright suggests that the missing video could have corroborated his earlier argument that he was not the person who fled from the getaway car following the Ennis robbery because his tennis shoes were white— not muddy.  Doc. 1 at 17.  His allegations are conclusory, however.

Wright again fails to plead, much less establish, deficient performance and prejudice.  Apart from his unsupported statements, Wright presents nothing to show that any other video was even available, not to mention that it would have changed the

outcome of the trial.  And the jury saw from the footage of the dashcam and the two bodycams that Wright resembled the individual fleeing from the getaway car.   His ineffective-assistance claim thus has no merit.

### iii. Failure to Obtain DNA Testing on Items from Grand Prairie Robbery

Third, Wright asserts that counsel was ineffective in failing to have DNA testing done on a Suburban and clothing discovered during the investigation of an apartment complex shortly after the Grand Prairie robbery.  Doc. 1 at 18.  Wright insists that he is innocent of that robbery and that, if these items were tested, his DNA would not have been on them.   He surmises thus that the absence of his DNA would have corroborated his innocence claim.

Wright seemingly overlooks that the robbers wore surgical masks, which were recovered at the apartment complex soon after the robbery, and that his DNA was found on one of the masks.  Notably, he presents no possible reason why counsel's decision to forgo additional DNA testing amounted to deficient performance.  Wright also fails to rebut the strong presumption of reasonableness that attaches to trial counsel's decisions, such as whether to conduct more DNA testing.  *See Strickland*, 466 U.S. at 689 (summarizing the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and that "the challenged action

'might be considered sound trial strategy'" ).  A decision not to conduct further DNA testing could have been a reasonable trial strategy.  Further DNA testing might have inculpated Wright even more and undercut his sufficiency-of-the-evidence argument. *See Skinner v. Quarterman*, 528 F.3d 336, 341-42 (5th Cir. 2008) (counsel was not ineffective for failing to secure DNA test where additional DNA test might undercut a primary defense argument and potentially incriminate the defendant); *see also Foxworth v. Director, TDCJ-CID,* No. 9:09CV56, 2013 WL 3013585, at *22-23 (E.D. Tex. June 14, 2013) (counsel's alleged error in not obtaining DNA test involved strategic decision that did not rise to level of viable Sixth Amendment claim).  "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Skinner,* 528 F.3d at 341; *see also Canfield v. Lumpkin*, 998 F.3d 242, 247 (5th Cir. 2021) ("Counsel is not expected to be a 'flawless strategist or tactician' and he 'may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities.'" (quoting *Harrington v. Richter*, 562 U.S. 86, 110 (2011)).

Wright's claim also fails on the prejudice prong.  Besides his conclusory assertions, Wright presents nothing to show that more DNA testing would have disclosed beneficial information.  Without that showing, he cannot prove that he was

prejudiced by counsel's failure to have more tests performed. *See Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir.2002). Critically, Wright only speculates that further DNA testing, if performed, might have provided exculpatory evidence. He does not show that it would have changed the outcome of his trial, considering the significant evidence against him. Bare speculations alone do not suffice to meet his heavy burden. Accordingly, Wright's ineffective-assistance of counsel claim lacks merits.

### iv.  Failure to Call Rakeisha Mitchell as a Witness

Next, Wright contends that counsel rendered ineffective assistance in failing to interview and call Rakeisha Mitchell, the owner of the vehicle used in the Ennis robbery. Doc. 1 at 18. He asserts that Mitchell had told his counsel that she had loaned the car to "Lil Bo" from Shreveport who had participated in the robbery with Kameron Robinson, Wright's co-defendant. Doc. 1 at 18-19.

Wright again fails to provide an affidavit from Mitchell, detailing that she was available, would have testified, and her testimony would have been favorable to him. *See United States v. Fields*, 761 F.3d 443, 461 (5th Cir. 2014). Nonetheless, the Presentence Report (PSR) contradicts Wright's unsupported assertions. To be sure, Mitchell advised the Ennis Police Department that "Bo" took her car without permission and that she did not know his name. Crim. Doc. 160-1 at 7, PSR ¶ 12. Wright also fit the physical description of the robber and was found, wearing green

pants like the ones worn during the robbery, and hiding with co-defendant Robinson. A white hoodie and pistol, like the ones used during the robbery, were also found in the gateway car.   On this record, any testimony by Mitchell would not have impacted the outcome here.   Thus, Wright's claim again fails on both *Strickland* prongs.

### v.   Failure to Further Investigate the Case

Lastly, Wright asserts that counsel failed to properly investigate his claims that (1) he did not commit the robberies, (2) they were perpetrated instead by an unknown Black man from South Dallas, and (3) he was a marijuana dealer who used the Ennis "treehouse," where he was arrested, to sell marijuana.   Doc. 1 at 19.

Wrights' allegations are once more conclusory.   A movant who alleges a failure to investigate on the part of his counsel must "allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial."   *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989).   Wright does not specify what an investigation would have revealed, let alone how it would affected his trial.   *See United States v. Curtis*, 769 F.3d 271, 276 (5th Cir. 2014) ("A defendant must rely on more than bare allegations about counsel's failure to interview or produce a witness and must show that the witness's testimony, if offered, would have been exculpatory.").   Wright's ineffectiveness claim therefore has no merit.

### III.   MOTION FOR DISCOVERY

As noted, Wright moved for discovery after briefing closed.  Doc. 11.  He seeks an order authorizing a video expert to review a store surveillance video created during the Duncanville robbery and associated photographic evidence.  Doc. 11 at 2-4.  His request relates to his first claim of ineffective assistance—that counsel should have retained a video expert to examine the physical characteristics of the person in the large camouflage jacket and opine that it was not Wright who was instead slender and muscular.   The Government opposes the motion for discovery.  Doc. 12.

Rule 6 of the Rules Governing Section 2255 Proceedings grants the Court discretion to "authorize a party to conduct discovery" upon a showing of good cause. *See Bracy v. Gramley,* 520 U.S. 899, 904 (1997).  A movant demonstrates "good cause" under Rule 6(a) "'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.'" *United States v. Fields* , 761 F.3d 443, 484 (quoting *Bracy*, 520 U.S. at 908-09).   Such factual dispute, however, must be based on specific factual allegations.  Yet conclusory allegations alone do not warrant discovery; instead, "the petitioner must set forth specific allegations of fact."  *United States v. Webster*, 392 F.3d 787, 802 (5th Cir. 2004) ("Conclusional allegations are insufficient to warrant discovery[.]").

Wright fails to present specific allegations of fact that would entitle him to relief. As noted in the first ground, Wright cannot establish that any purported deficient performance by counsel in failing to retain a video expert caused him prejudice.  So he cannot show good cause to permit discovery—that other discovery would resolve a specific factual dispute.  *See Lave v. Dretke*, 416 F.3d 372, 381 (5th Cir. 2005) (noting "court does not 'sanction fishing expeditions based on a petitioner's conclusory allegations'" in a motion for discovery).  Accordingly, Wright's motion for discovery is denied.

## IV.   CONCLUSION

For all these reasons, Wright's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 and his motion for discovery are **DENIED**.  This case is therefore **DISMISSED WITH PREJUDICE**.

SO ORDERED.

Signed August 9th, 2023.


_____
ED KINKEADE
UNITED STATE DISTRICT JUDGE